**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| COLUMBIA GAS TRANSMISSION, LLC, | : : : | Case No. 2:11-CV-485 |
| Plaintiff, | : : | JUDGE ALGENON L. MARBLEY |
| v. | : : | Magistrate Judge Mark R. Abel |
| KANWAL N. SINGH, et al., | : : | |
| Defendants. | : | |

<u>**OPINION AND ORDER**</u>

**I. INTRODUCTION**

This matter is before the Court on the following motions: Plaintiff Columbia Gas Transmission, LLC's ("Columbia Gas" or "Plaintiff") Motion for Preliminary Injunction, (Doc. 2); Defendants Kanwal N. Singh and Lynn W. Singh's ("Singhs" or "Defendants") Request for Sanctions Against Plaintiff, (Doc. 6); Defendants' "Motion for Court to Order US Attorney Investigation," (Doc. 8); Defendants' Motion to Dismiss Plaintiff's Complaint, (Doc. 17); Plaintiff's Motion to Enforce Settlement of Injunction-Related Claims, ("Motion to Enforce Settlement"), (Doc. 19); and "Motion of Defendants for Order Suspending Time for Filing Pleadings Pending Resolution of Plaintiff's Motion to Enforce Settlement," (Doc. 24).

For the reasons stated herein, this Court **GRANTS** Plaintiff's Motion to Enforce Settlement. The remaining motions listed above are now **MOOT**. Columbia Gas's Complaint is **DISMISSED WITHOUT PREJUDICE**, but this Court will retain jurisdiction over the agreed

upon matters set forth in the attached Order for purposes of enforcement.  Defendants' *pro se*

counterclaims are also **DISMISSED WITHOUT PREJUDICE.**

## II. BACKGROUND

*A. Underlying Dispute*

Columbia Gas filed a Complaint and Motion for Preliminary Injunction simultaneously

on June 6, 2011, seeking injunctive relief to enjoin Defendants from interfering with Columbia

Gas's right-of-way on which two, separate, 20-inch diameter, high-pressure, natural gas,

transmission pipelines, known as B-100 and B-115 ("Pipelines"), are located.  Columbia Gas's

right-of-way runs through Defendants' property, which Defendants acquired in August, 2004,

with public notice of the right-of-way and notice that the Pipelines were in operation on the

property.  Columbia Gas's predecessor, the Ohio Fuel Gas Company, acquired the right-of-way

in 1949, and modification of deed of easement was recorded in the Franklin County Recorder's

Office in 1960, which identified the Pipelines as having been installed and in operation on the

property.  When the Ohio Fuel Gas Company and Columbia Gas merged in December 1970,

Columbia Gas succeeded to the rights possessed in the right-of-way.  Columbia Gas is entitled

to, and has been, operating and maintaining the Pipelines in the right-of-way on Defendants'

property.

Columbia Gas alleges that Defendants have been conducting excavation and grading

activities on the property that have only narrowly avoided the Pipelines.  Columbia Gas alleges

that on June 1, 2011, its personnel observed that dirt was piled over the right-of-way, and

construction equipment was parked on top of the Pipelines.  The Columbia Gas personnel met

Mr. Singh on the property and advised Mr. Singh that due to the existence of the right-of-way

and Pipelines, Defendants should not develop the property without first submitting plans to

2

Columbia Gas.  Mr. Singh allegedly responded that "he does not need to ask for Columbia['s] permission to do anything on the [p]roperty" and "it was Columbia that needed to seek permission to be on the [p]roperty."  (Compl. ¶ 15).  Mr. Singh further informed the Columbia Gas personnel that the property was rented to a tenant who planned to construct an access road over the Pipelines and park trailers on the property.

The Columbia Gas personnel requested that the dirt piles and equipment sitting above the Pipeline be removed, but Mr. Singh allegedly declined to remove the obstructions.  Mr. Singh indicated that he no longer wanted to respond to Columbia Gas personnel's questions and drove away.  After Mr. Singh departed from the property, the personnel discovered an unused post hole that "had been augured to within approximately one foot of one of the [P]ipelines."  *Id.* at ¶ 20. The personnel determined that the Pipeline needed to be exposed to determine if it had been breached or damaged.  *Id.*  While the personnel were in the process of exposing the Pipeline to check its integrity, Mr. Singh returned with Mrs. Singh, and an argument ensued with the personnel about whether they were allowed on the Defendants' property.

Columbia Gas alleges that despite its warnings, Defendants have indicated that they would proceed with construction, and continue to develop their property without regard to Columbia Gas's easement rights and safety concerns.  Columbia Gas also alleges that as a result of the Defendants' actions, it has been prevented from maintaining the Pipelines and complying with federal regulations, which could endanger human lives, cause property damages, and jeopardize gas services in the area.  In its Motion for Preliminary Injunction, Columbia Gas asks this Court, among other things, to enjoin Defendants "from obstructing or in any way interfering with Columbia's right-of-way and the operation and maintenance of Lines B-100 and B-115." (Doc. 2-1).

After Columbia Gas filed this lawsuit in June, 2011, Defendants made a number of *pro se* filings. Defendants filed a Response in "Opposition to Plaintiff Motion for Preliminary Injunction and . . . Request for Sanctions Against Plaintiff," (Doc. 6), before Mr. Michael Braunstein filed his Notice of Appearance as counsel for Defendants, (Doc. 7), and then a "Motion for Court to Order US Attorney Investigation," (Doc. 8), and Counterclaims, (Doc. 9, 13), shortly after Mr. Braunstein's Notice of Appearance was filed.

*B. Local Rule 65.1 Conference*

This Court held a Local Rule 65.1 Conference on August 10, 2011. Mr. James Doerfler was on the phone as counsel for Columbia Gas, and Mr. Braunstein was present but explained at the beginning of the Conference that he was "no longer [present] for the defendant, since [he] was fired this morning."[1] (Doc. 16 at 2). Mr. Singh explained that he would be preceding *pro se* and that they would be looking for counsel for Mrs. Singh. This Court advised Defendants that they had the right to proceed *pro se*, but warned the Defendants as follows:

> I will urge you, on the strongest terms as I know how, for you not to go pro se. I have yet to have a pro se litigant who has demonstrated the capability of protecting his or her interests to the extent that a licensed practitioner can. One reason is that you aren't learned in the nuances of the law. . . .
>
> A second and equally compelling reason for you not to proceed pro se is that you have an emotional attachment to this case, and your emotions invariably, inevitably and, if that is not clear enough, always will cloud your judgment. . . .
>
> And, so, you know, there is an old adage that a person that represents himself has a fool for a client. . . .
>
> . . . Though I am duty-bound and I always do assure that justice is done, you know, I just can't advocate on your behalf. And you need an advocate skilled in the law on your behalf in a case such as this.

---

[1] Because Mr. Braunstein acted as counsel for Defendants and negotiated a potential settlement with Mr. Doerfler prior to the Local Rule 65.1 Conference, this Court asked Mr. Braunstein to remain present at the Conference in case he was needed to clarify events that took place prior to his being terminated by the Singhs. (Doc. 16 at 14).

*Id.* at 3–5.

Mr. Doerfler then explained to the Court that an injunction hearing may no longer be necessary because a large portion of the dispute had become moot.  *Id.* at 5.  Columbia Gas filed its Motion for Preliminary Injunction, in part, to ensure that crossovers were engineered over the top of the Pipelines so that the construction could be completed on the Singhs' property without compromising the integrity of the Pipelines.  Mr. Doerfler explained further that this issue was now resolved as, "Mr. Braunstein helped broker an agreement where the Singhs' engineer developed engineer drawings.  Columbia field personnel supervised the construction, and it is my understanding that the construction is now substantially complete."  *Id.* at 7.  The Court asked Defendants to confirm what Mr. Doerfler said:

> THE COURT:  All right.  So, that construction has been completed?
>
> MS LYNN SINGH:  Yes.
>
> MR. SINGH:  Yes.
>
> THE COURT:  So, at least there is an agreement on that that [sic] the construction that necessitated the building of the access road is complete?
>
> MR. SINGH:  Yes, sir.

*Id.* at 10.

In addition to a solution ensuring that the construction on Defendants' property would not compromise the integrity of the Pipelines, Columbia Gas sought a commitment from Defendants that they would not "impede or impair Columbia's ability to perform its maintenance obligation in connection with those pipelines," or allow their tenants to do so.  *Id.* at 11.  Mr. Doerfler explained that the relief requested by Columbia Gas was twofold.  The first part was assurance "that the Singhs and any other tenants or successors or assigns would not store or place trailers,

5

equipment, or containers anywhere in the easements." *Id.* at 12.  The second part was "that the tenant would only cross the pipelines at those engineered crossover points, because he's going to be bringing in heavy trailers." *Id.*  This Court asked Defendants if they had any objections to Columbia Gas's first request:

> THE COURT:  . . . Let me be more specific.  Do you have any objection to your tenant having none of its equipment in the easements?
>
> MR. SINGH:  We wouldn't say in writing, but we wouldn't do it, because we like to leave the rights as they are.
>
> THE COURT:  And, as they are, no equipment in the easements.
>
> MS. LYNN SINGH:  The easements are already in place, and we will abide by the easements that are already in place.
>
> THE COURT:  All right.  And those are the same easements about which you speak; correct, Mr. Doerfler?
>
> MR. DOERFLER:  That's correct.  These are the easements that have been in place since 1949.
>
> THE COURT:  Right. And you just don't—and you don't want the easements obstructed?
>
> MR. DOERFLER:  That is correct.
>
> THE COURT:  And you have no objection to the easements not being obstructed; is that right?
>
> MR. SINGH:  Right, but we would not sign anything.
>
> THE COURT:  That's not my question.
>
> MS. LYNN SINGH: We don't have any objections.

*Id.* at 16–17.  The Court then addressed Columbia Gas's second request:

> THE COURT:  All right.  The second thing is, the current tenant will not cross over except where crossovers have been constructed.  Do  you have any objection to that, Mr. Singh?

MR. SINGH:  Again, without agreement, we will—

THE COURT:  Mr. Singh,—

MS. LYNN SINGH:  Answer "yes" or "no."

MR. SINGH:  We have no objection.

THE COURT:  All right.  Okay.  Now, did that address the other outstanding issues.  Mr. Doerfler, is that your understanding?

MR. DOERFLER:  That's right, Your Honor.

THE COURT:  All right.  *So, both of the issues that are outstanding have been agreed to by the parties, because I have it on the record.*

*Id.* at 17 (emphasis added).  Mr. Doerfler then agreed to drop the lawsuit as long as Defendants would sign a written agreement memorializing the agreed-to terms.  This Court explained to Defendants that "*[w]hen there is a lawsuit and the parties reach an agreement settling that lawsuit as the two of you have*, then our procedures are such that you sign a document.  It's a contract really, but a document just reflecting the terms of the agreement."  *Id.* at 18.  Mr. Singh replied, "Ok."  *Id.*  Deadlines were set for memorializing the agreement, and the parties were instructed to have an executed copy of the written agreement on the Court's desk by August 31, 2011.

### C. Post-Conference Discussions

As per this Court's instructions, Columbia Gas sent a proposed written agreement to Defendants on August 17, 2011.  (Doc. 20-4).  Defendants responded on August 27, 2011, indicating that they were unwilling to settle the lawsuit despite their representations at the Local Rule 65.1 Conference that they would work with Mr. Doerfler in good faith.  (Doc. 20-6).  As a result, Columbia Gas filed its Motion to Enforce Settlement on August 31, 2011.  (Doc. 19).

Defendants' new counsel, Mr. Michael Moore, filed a Notice of Appearance on September 11, 2011, (Doc. 21), and a "Motion of Defendants for Order Suspending Time for Filing Pleadings Pending Resolution of Plaintiff's Motion to Enforce Settlement," ("Motion to Suspend Time"), (Doc. 24), shortly thereafter.  While the Court is unsure how to construe this "Motion to Suspend Time," Defendants ask the Court to decide the Motion to Enforce Settlement before deciding the other outstanding motions in this case, as it has the potential to be dispositive.  Defendants also explain that "should this case go forward, it is the current defense counsel's belief that the case will be served if additional pleadings are filed which will more clearly and precisely focus the issues inherent in the case." *Id.*  Mr. Moore appears to be referring to the *pro se* filings made by Defendants before he was retained as counsel.

This Court held a Telephonic Status Conference on October 4, 2011, with Mr. Doerfler and Mr. Moore to determine what, if any, progress had been made on memorializing an agreement.  The parties were directed to report to the Court by October 17, 2011, as to whether they had memorialized an agreement or whether the Court would need to decide the Motion to Enforce Settlement.  The parties filed a "Joint Report on Settlement on Conference" on October 17, 2011, indicating that they had been unable to memorialize a settlement.

The Court will now address the Motion to Enforce Settlement, which is ripe for review.

### III. LAW AND ANALYSIS

Columbia Gas asks this Court to resolve and dismiss this lawsuit by enforcing the settlement reached by the parties during the Local Rule 65.1 Conference.  Plaintiff argues that under Ohio law,[2] "a party cannot enter into a binding settlement agreement and then attempt to

---

[2] Both parties urge this Court to apply Ohio law when resolving the question of whether a valid settlement agreement exists.  Ohio law should apply because a settlement agreement is a binding contract, and the

unilaterally repudiate that agreement at a later date."  (Doc. 20) (citing *Spercel v. Sterline Indus., Inc.*, 285 N.E.2d 324, 326–27 (Ohio 1972)).  The Singhs acknowledged a settlement was reached during the Conference, which is reflected in the transcript from the Conference.  All that is left for this Court to do, Columbia Gas contends, is to memorialize the agreement in writing and to enter an order formally dismissing the case without prejudice.

Defendants counter that a valid settlement agreement does not exist because there was no meeting of the minds before, or during, the Local Rule 65.1 Conference.  Defendants argue that the Conference was unfair and "went off the rails" because the Singhs were preceding *pro se* at the time.[3]  They dispute the scope of Columbia Gas's easement; the fact that Mr. Doerfler and Mr. Braunstein reached an agreement in principal prior to the Local Rule 65.1 Conference; what exactly was agreed upon during the Local Rule 65.1 Conference; and the terms in Columbia Gas's proposed order memorializing the settlement.  They argue that the City of Columbus is a necessary party in this lawsuit because it allegedly owns the land under which one of the

---

choice of law provisions of the forum state, Ohio, point to the law of the state in which the contract was formed, Ohio.  *Edwards v. Hocking Valley Cmty. Hosp.*, 87 F. App'x 542, 550 (6th Cir. Feb. 6, 2004) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941); *Wells v. 10-X Mfg. Co.*, 609 F.2d 248, 253 (6th Cir. 1979); *Nationwide Mut. Ins. Co. v. Ferrin*, 487 N.E.2d 568, 569 (Ohio 1986)); *see also The Glidden Co. v. Kinsella*, 386 F App'x 535 (6th Cir. 2010) (looking to Ohio law to determine whether an agreement was reached); *Bameriliease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992) (explaining that settlement agreements are governed by contract law and Ohio law requires contracts be interpreted according to the law of the place of the contract's making).

[3] The Court will note that it finds this contention made by Defendants' new counsel unpersuasive.  The Court advised Defendants against proceeding *pro se* at the Local Rule 65.1 Conference, (Doc. 16 at 3–5), and despite the Court's warnings, the Defendants decided to proceed without the assistance of counsel.  The record in this case indicates that even while Mr. Braunstein was acting as counsel for the Defendants, they continued to file documents *pro se* and without knowledge of their counsel.  Proceeding without the assistance of counsel does not give litigants the right to disregard the federal and local rules.  *See West v. Adecco Emp't Agency*, 124 F. App'x 991, 992 (6th Cir. 2005) (explaining that the Supreme Court has "never suggested procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel").

pipelines runs.  However, if the Court does find that the parties have reached a valid agreement, Defendants request that an evidentiary hearing be held to determine the precise terms of the settlement.

On reply Plaintiff argues that the issues raised by Defendants are not ripe or are non-essential to the terms of the settlement.  Plaintiff explains that:

> Underlying the Singhs' present argument is a more fundamental difference in the way the parties are approaching the dispute.  Columbia has made clear throughout these proceedings that its narrow focus is to resolve the immediate pipeline safety issues that gave rise to the filing of its injunction request.  By contrast, the Singhs have endeavored to expand the dispute more broadly to address their belief that the restrictions imposed by Columbia's pre-existing 1949 easement on the Singhs' proposed use of the property might constitute some sort of a "taking."

(Doc. 28).

Mindful of the parties' positions, this Court will proceed with a two-part analysis.  First, this Court must determine whether, under Ohio law, a valid settlement was reached between the parties during the Local Rule 65.1 Conference.  If the parties did in fact reach a settlement, this Court must then decide whether, under this Circuit's precedent, it should enforce that oral agreement.

### A. Existence of a Valid Settlement Agreement

Under Ohio law, "a valid settlement agreement is a contract between parties, requiring a meeting of the minds as well as an offer and an acceptance thereof."  *Rulli v. Fan Co.*, 683 N.E.2d 337, 338–39 (Ohio 1997) (citing *Noroski v. Fallet*, 442 N.E.2d 1302, 1304 (Ohio 1982)).  Ohio law requires "that the terms of the agreement establish an objective meeting of the minds, which is to say that the contract was clear and unambiguous."  *216 Jamaica Ave., LLC v. S&R Playhouse Realty Co.*, 540 F.3d 433, 440 (6th Cir. 2008).  Ambiguity exists under Ohio law "where contract language is susceptible to two or more reasonable interpretations," *Potti v.*

10

*Duramed Pharm., Inc.*, 938 F.2d 641, 647 (6th Cir. 1991), but a term is not ambiguous merely because two parties offer substantially different interpretations, *216 Jamaica Ave., LLC*, 540 F.3d at 440.  Moreover, a party cannot enter into a binding settlement agreement and then attempt unilaterally to repudiate that agreement at a later date.  *Spercel v. Sterline Indus., Inc.*, 284 N.E.2d 324, 326–27 (Ohio 1972) (enforcing an oral settlement agreement in the presence of the court because such an agreement constitutes a binding contract); *see Klever v. Stow*, 468 N.E.2d 58, 61–62 (Ohio Ct. App. 1983) (journalizing an agreement reached between attorneys and their client).

There was clearly a meeting of the minds at the Local Rule 65.1 Conference.  Both parties agreed that the construction on the Singhs' property that gave rise to the filing of this lawsuit in the first place has since been completed.  (Doc. 16 at 10).  The Singhs agreed to keep Columbia Gas's easements unobstructed and to ensure that their tenant does not keep any of his equipment on the easement.  *Id.* at 16–17.  Defendants also agreed to make sure the crossovers would be used when the property was accessed.  *Id.* at 17.  In exchange, Columbia Gas agreed to drop the lawsuit.  This Court observed that "both of the issues that are outstanding have been agreed to by the parties, because I have it on the record."  *Id.*

In their Memorandum in Opposition to Plaintiff's Motion to Enforce Settlement ("Memorandum in Oppositions"), (Doc. 27), Defendants argue that the term "obstruct" is ambiguous, and that there was no meeting of the minds with respect to this term.  Defendants argue that "[w]hat the Singh's meant by 'obstruct' was never defined in the Conference, but the only reasonable interpretation is found in the specific question the Court directed to them.  That agreement was simply that on a temporary basis, the tenant would move its trailers over the pipes on the crossovers that were designed."  (Doc. 27).

11

Defendants' argument is unconvincing.  As is evident from the Local Rule 65.1 Conference transcript, when the Court was discussing "obstruction" of the easement with the Singhs, it was referring to placing large heavy objects on the easements, which may compromise the integrity of the Pipelines, such as the tenant's equipment.  The Court was not referring to the crossovers as Defendants seem to allude to in their Memorandum in Opposition.  These were two different parts of the settlement agreement that were resolved separately.  Furthermore, this Court disagrees that the use of the term obstruct was ambiguous.  Columbia Gas repeated throughout the Local Rule 65.1 Conference and throughout its filings that its major concern is the Singhs and their tenant placing heaving vehicles and equipment above the Pipelines.  At the time the Court was discussing the terms of the settlement, everyone present was well aware of which activities the Court was referring to when it referred to "obstruction" of the easements.

This Court finds that the Parties reached an oral settlement agreement on August 10, 2011, at the Local Rule 65.1 Conference.

### B. Enforcement of the Settlement Agreement

Because the parties reached an oral settlement agreement during the Local Rule 65.1 Conference, this Court must now decide whether to enforce that agreement.  In determining whether to enforce a settlement agreement, "the district court must conclude that agreement has been reached on all material terms."  *Brock v. Scheuner Corp.*, 841 F.2d 151, 152 (6th Cir. 1988).  A federal court has the power to enforce a settlement agreement "even if that agreement has not been reduced to writing."  *Brock*, 841 F.2d at 152 (citing *Bowater N. Am. Corp. v. Murray Mach.*, 773 F.2d 71, 77 (6th Cir. 1985)).  "When parties have agreed on the essential terms of a settlement, and all that remains is to memorialize the agreement in writing, the parties

are bound by the terms of the oral agreement." *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001).

If facts material to the agreement are in dispute, an evidentiary hearing must ordinarily be held. *Id.* (citing *Kulkla v. Nat'l Distillers Prods. Co.*, 483 F.2d 619, 622 (6th Cir. 1973); *Aro Corp. v. Allied Witan Co.*, 531 F.3d 1368, 1371 (6th Cir. 1976)). However, "no evidentiary hearing is required where an agreement is clear and unambiguous and no issue of fact is present." *Id.* (citing *Aro Corp.*, 531 F.3d at 1372). Therefore, "summary enforcement of a settlement agreement has been deemed appropriate where no substantial dispute exists regarding the entry into and the terms of an agreement." *Id.* (citing *Kulkla*, 483 F.2d at 621; *Therma-Scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414, 418 (6th Cir. 2000)).

In *RE/MAX International, Inc. v. Realty One, Inc.,* the Sixth Circuit affirmed a district court's decision enforcing a verbal settlement agreement and finding that a party had breached the agreement by failing to negotiate in good faith and agree to final terms. 271 F.3d at 645–48. RE/MAX filed suit against Realty One and another real estate brokerage company alleging that their practice of paying brokers associated with RE/MAX lower commissions on split-commission transactions violated the Sherman Antitrust Act and analogous state laws. *Id.* at 636. After a mistrial, the parties commenced settlement negotiations. *Id.* at 637. RE/MAX and the other real estate brokerage company were about to confirm an agreement reached on the record after negotiating for a number of hours, and Realty One unexpectedly stated that it desired to settle on similar terms. *Id.* at 637−38. Realty One stated on the record that it would "adopt the same terms and [] draft the paper in the same time." *Id.* at 638 n. 3.

Despite Realty One's representations, it subsequently refused to memorialize the settlement reached, arguing that the draft proposed by RE/MAX contained additional terms and

13

provisions that were not included in the oral settlement. *Id.* at 639.  The Court affirmed the district court's decision that a valid settlement agreement had been reached by the parties, and explained that "[t]he existence of a valid agreement is not diminished by the fact that the parties have yet to memorialize the agreement." *Id.* at 645–46.  The parties had already agreed on the essential terms of the settlement and were, therefore, "bound by the terms of the oral agreement." *Id.* at 646.  The district court also correctly determined that Realty One breached the oral agreement by failing to negotiate in good faith and agree to the final terms of the settlement agreement. *Id.* at 646–47.

This Circuit reached a similar conclusion in *The Glidden Company v. Kinsella*, again affirming a district court's decision to enforce an oral settlement agreement, and adopting and enforcing one party's written memorialization as the final settlement agreement between the parties.  386 F. App'x 535, 536 (6th Cir. 2010).  At a settlement conference before a magistrate judge over a trademark dispute, the parties reached an agreement, the essential terms of which were transcribed by the court reporter, and then the parties agreed to work together to finalize the written agreement. *Id.* at 537–39.  The parties could not agree upon the final written memorialization of the oral settlement, in part because one party insisted that the proposed written agreement incorporated additional material terms not discussed at the conference. *Id.* at 538.

The Sixth Circuit agreed with the lower court's conclusion that an agreement was reached during the settlement conference because the parties assented to an outline of the settlement. *Id.* at 540.  One party stated that "[t]he terms written down by your law clerk and expressed here are the terms that we understand are the essence of the settlement, and we accept those terms," while the other party agreed that "the terms set forth by the Court are the terms

14

acceptable to [the party] for settlement in this matter." *Id.*  The Court affirmed the district court's decision to enforce the written memorialization proposed by one party, with slight modifications.  *Id.* at 547.

This Court finds that the parties reached a valid and enforceable oral settlement agreement at the Local Rule 65.1 Conference.  The record indicates that there was agreement on three separate material terms of the settlement: (1) the Singhs agreed to ensure that Columbia Gas's easements would not be obstructed, *id.* at 16–17; (2) the Singhs agreed to use the constructed crossovers when crossing the easements, *id.* at 17; and (3) Columbia Gas agreed to drop the lawsuit once the settlement agreement was memorialized, *id.* at 18.  This Court explained to Defendants that "[w]hen there is a lawsuit and the parties reach an agreement settling that lawsuit as the two of you have, then our procedures are such that you sign a document.  It's a contract really, but a document just reflecting the terms of the agreement." *Id.* Mr. Singh replied, "Ok," acknowledging that he understood.  *Id.* at 18.  Similar to the parties in *The Glidden Company*, the parties here agreed to work together in good faith to memorialize the agreement.  The record indicates that after the Local Rule 65.1 Conference, Defendants failed to work with Mr. Doerfler to finalize the agreement.

This Court finds that there was an enforceable oral settlement agreement reached at the Local Rule 65.1 Conference.  This Court will next determine whether the proposed order submitted by Plaintiff as representative of the terms of the settlement reached during the Conference is, in fact, an accurate memorialization of the agreement reached.

### *C. Memorialization of the Agreement*

The order proposed by Plaintiff reads as follows:

(i) Neither Defendants Kanwal and Lynn Singh, nor any tenant, successor or assign of theirs, shall impair or impede the rights-of-way possessed by Columbia for pipelines B-100 and B-115 by placing trailers, equipment, containers or other objects in any portion of the rights-of-way that would impede Columbia's use and maintenance of the right-of-way. Consistent with applicable precedent in similar pipeline cases, the Court finds the reasonable and necessary width of the gas pipeline easement/right-of-way for these pipelines to be 50 feet, or 25 feet in each direction from the centerline of each of the pipelines.

(ii) Defendants, their tenants, successors and/or assigns shall restrict any vehicles which seek to cross over pipelines B-100 and B-115 on their Property to use only the engineered cross-over locations shown on Drive Plan Phase 1 Drawing, dated June 24, 2011 by P&L Systems, Inc.

(iii) Based upon these agreed-upon promises by the Defendants to refrain from impairing or impeding the rights-of-way for lines B-100 and B115 in the future, Columbia has agreed to dismiss its Complaint against the Singhs.

The Court hereby DISMISSES WITHOUT PREJUDICE the Complaint of Columbia Gas Transmission LLC. The Court will retain jurisdiction over the agreed upon matters set forth in this Order for purposes of enforcement.

(Doc. 19-1).  Defendants contest items (i) and (ii) of the proposed order in their Memorandum in Opposition.

### 1. Item (i)

As for item (i), Defendants argue that the Singhs' only agreement during the Local Rule 65.1 Conference was that their current tenant would not obstruct the easement; that obstruction was never defined during the Conference; that the agreement was simply on a temporary basis; and that the injunction proposed here is overbroad.

This Court cannot view the discussions that took place during the Local Rule 65.1 Conference in a vacuum, as Defendants urge the Court to do.  There was no need to define the term obstruct at the Local Rule 65.1 Conference.  As discussed above, when the Singhs' agreed not to obstruct Columbia Gas's easements, they stated they would instruct their tenant to keep his heavy equipment off the easements.  (Doc. 16 at 16).  The Singhs acknowledged that the

easements had been in place since 1949, and that they would "abide by the easements already in place." *Id.*  This Court finds that the proposed language restricting the Singhs, their tenant, successor or assign from impairing or impeding the rights-of-way "by placing trailers, equipment, containers or other objects in any portion of the rights-of-way" is an accurate memorialization of what was agreed upon during the Local Rule 65.1 Conference.

Defendants next take issue with the language in item (i) that describes the rights-of-way as "50 feet, or 25 feet in each direction from the centerline of each of the pipelines."  (Doc. 19-1).  Defendants do not cite any law, but argue "[i]n that there are two separate pipelines, which eventually come together at the north end of the properties, by enjoining the Defendants from placing 'other objects' anywhere on the easement, the Court would create a 100 foot wide 'no-go zone' right through the heart of the properties."  (Doc. 27).

Neither party raised issues related to the width of the right-of-way during the Local Rule 65.1 Conference.  Furthermore, Columbia Gas did not assert any facts or law related to the width of the right-of-way in its Complaint, which it has now agreed to dismiss if this Court grants its Motion to Enforce Settlement.  The Court will not incorporate terms regarding the precise width of the easement into the agreement that were never raised or agreed upon by the parties during the Conference.  *See Brock*, 841 F.2d at 153 ("The court must enforce the settlement as agreed to by the parties and is not permitted to alter the terms of the agreement.").

The parties have agreed, however, that Ohio law governs their settlement agreement, and relevant Ohio case law indicates that where the width of an easement is not specified in the document granting the easement, the grant should be construed to provide the grantee with "what is reasonably necessary and convenient to serve the purpose for which the easement was granted."  *Columbia Gas Transmission Corp. v. Adams*, 646 N.E.2d 923, 926 (Ohio Ct. Com. Pl.

17

1994); *Roebuck v. Columbia Gas Transmission Corp.* 386 N.E.2d 1363, 1368 (Ohio Ct. App. 1977) ("if an easement is not specifically defined, the rule is that its extent is only such as is reasonably necessary and convenient for the purpose for which it was created"); *Columbia Gas Transmission Corp. v. Large*, 619 N.E.2d 1215, 1216 (Ohio Ct. Com. Pl. 1992) (following *Roebeck*'s precedent and explaining that the width of an unspecified easement should be determined "by what is reasonably necessary and convenient for the purposes for which the easement was originally granted").

Accordingly, this Court will remove the following language from item (i) of the proposed order: "Consistent with applicable precedent in similar pipeline cases, the Court finds the reasonable and necessary width of the gas pipeline easement/right-of-way for these pipelines to be 50 feet, or 25 feet in each direction from the centerline of each of the pipelines," and replace it with the following language: "Consistent with applicable precedent in similar pipeline cases, the Court finds the easement extends only such as is reasonably necessary and convenient for the purpose for which it was created."

## 2. Item (ii)

Defendants argue that item (ii), as drafted, does not accurately reflect the terms settlement agreement reached during the Local Rule 65.1 Conference.  Defendants argue that the language reflects "a permanent injunction against *any vehicular traffic* anywhere on the easement."  (Doc. 27).  Defendants also contend that one of the crossovers is located on property owned by the City of Columbus and that Columbia Gas should have joined the City as a party in this lawsuit.  Plaintiff counters that "[a]s the landowner and the party constructing any temporary roadway necessary to provide access for their tenant, it is the responsibility of the Singhs (and their retrained engineer) to determine whether or not a permit would be required from the City of

Columbus to construct a temporary roadway that would cross over the City's paper street, and if one was required, then to obtain any such permit."  (Doc. 28).  Moreover, Columbia Gas points out that the Singhs' had already constructed a temporary roadway when the Local Rule 65.1 Conference took place, and they "would seemingly be precluded under the unclean hands doctrine from using their own oversights as a basis to now scuttle the settlement."  *Id.*

It is difficult for the Court to discern from Defendants' *pro se* filings why they believe that the City of Columbus is a necessary party in this lawsuit.  Nevertheless, the Court agrees with Columbia Gas that it was the responsibility of the Singhs, when they constructed temporary crossovers, to determine whether a permit would be required from the City of Columbus.  The issues related to the City of Columbus and its "paper street" appears to be outside of the scope of the issues addressed in this Opinion and Order, namely, the injunctive relief requested by Columbia Gas.

The Court finds that the language in item (ii) accurately reflects the settlement agreement reached during the Local Rule 65.1 Conference.  Defendants take no issue with item (iii), nor does this Court.  Therefore, the Court finds the proposed order an accurate memorialization of the oral settlement agreement reached during the Local Rule 65.1 Conference, with the exception of the modification referenced above.[4]

---

[4] The following language will be removed from item (i): "Consistent with applicable precedent in similar pipeline cases, the Court finds the reasonable and necessary width of the gas pipeline easement/right-of-way for these pipelines to be 50 feet, or 25 feet in each direction from the centerline of each of the pipelines," and replaced as follows: "Consistent with applicable precedent in similar pipeline cases, the Court finds the easement extends only such as is reasonably necessary and convenient for the purpose for which it was created."

*D. Outstanding Motions and Counterclaims Made by Defendants*

The following pending motions in this case are now moot in light of this Opinion and Order: Plaintiff's Motion for Preliminary Injunction, (Doc. 2); Defendants' Request for Sanctions Against Plaintiff, (Doc. 6); Defendants' "Motion for Court to Order US Attorney Investigation," (Doc. 8); Defendants' Motion to Dismiss Plaintiff's Complaint, (Doc. 17); and "Motion of Defendants for Order Suspending Time for Filing Pleadings Pending Resolution of Plaintiff's Motion to Enforce Settlement," (Doc. 24).

Defendants filed a *pro se* "Counter-Complaint" pleading and an amendment to that pleading, which this Court will construe as counterclaims. (Doc. 8, 9). In those filings Defendants appear to assert civil rights violations and attempt to add various parties to this litigation. Defendants' new counsel has indicated "that should this case go forward, it is current defense counsel's belief that the case will be served if additional pleadings are filed which will more clearly and precisely focus the issues [raised in the *pro se* filings] that are inherent in this case." (Doc. 24).

It is unnecessary, however, for Defendants' counsel to file additional pleadings. The Court need not construe Defendants' factually and legally deficient counterclaims because Plaintiff's Motion to Enforce Settlement is granted and this lawsuit is dismissed. Therefore, Defendants' counterclaims are also **DISMISSED WITHOUT PREJUDICE**. *See Brown v. Matauszak*, 415 F. App'x 608, 614–15 (6th Cir. 2011) ("Particularly where deficiencies in a complaint are attributable to oversights likely the result of an untutored *pro se* litigant's ignorance of special pleading requirements, dismissal of the complaint without prejudice is preferable.") (citing *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990)); *Garrison v. Michigan Dept. of Corrections*, 333 F. App'x 914, 915–16 (6th Cir. 2009) (finding that the

district court acted within its discretion when it dismissed *pro se* plaintiffs' complaint alleging civil right violations without prejudice due to the improper nature of some of the filings).

## IV. CONCLUSION

For the foregoing reasons, this Court **GRANTS** Plaintiff's Motion to Enforce Settlement and enters the proposed order submitted by Plaintiff, with the modification of deleting the following language in item (i): "Consistent with applicable precedent in similar pipeline cases, the Court finds the reasonable and necessary width of the gas pipeline easement/right-of-way for these pipelines to be 50 feet, or 25 feet in each direction from the centerline of each of the pipelines," and replacing it as follows: "Consistent with applicable precedent in similar pipeline cases, the Court finds the easement extends only such as is reasonably necessary and convenient for the purpose for which it was created."  The following motions are now **MOOT**: Plaintiff's Motion for Preliminary Injunction, (Doc. 2); Defendants' Request for Sanctions Against Plaintiff, (Doc. 6); Defendants' "Motion for Court to Order US Attorney Investigation," (Doc. 8); Defendants' Motion to Dismiss Plaintiff's Complaint, (Doc. 17); and "Motion of Defendants for Order Suspending Time for Filing Pleadings Pending Resolution of Plaintiff's Motion to Enforce Settlement," (Doc. 24).  Columbia Gas's Complaint is **DISMISSED WITHOUT PREJUDICE**, but this Court will retain jurisdiction over the agreed upon matters set forth in the entered order for purposes of enforcement, and Defendants' *pro se* counterclaims are also **DISMISSED WITHOUT PREJUDICE.**

IT IS SO ORDERED.

  s/ Algenon L. Marbley
**Algenon L. Marbley**
**United States District Judge**

**Dated: March 26, 2012**